IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES DOOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-409-R |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) under the Social Security Act. United States District Judge David L. Russell has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative development.

I.     **PROCEDURAL BACKGROUND**

Plaintiff's application for DIB was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-24). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus,

the decision of the ALJ became the final decision of the Commissioner. This judicial appeal followed.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 14, 2011, the alleged disability onset date. (TR. 17). At step two, the ALJ determined that Plaintiff had severe impairments of degenerative disc disease status post fusion, congenital aortic stenosis post valve replacement, and organic mental disorder. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 17).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (TR. 22). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally crouch, kneel, balance, crawl, stoop and climb stairs and ladders. He can have no interaction with the public.

(TR. 18).

Based on the finding that Plaintiff could not perform his past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC in a question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 51). Given the limitations, the VE testified that Plaintiff could perform

three jobs. (TR. 51-52). The ALJ adopted the testimony of the VE and concluded that Mr. Doom was not disabled based on his ability to perform other work that exists in significant numbers in the national economy. (TR. 23-24).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges errors in the RFC assessment involving both physical and mental impairments and a lack of substantial evidence to support the step five finding due to the allegedly faulty RFC.

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). "Evidence is not substantial if it is

overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.     ERROR IN THE EVALUATION OF PLAINTIFF'S MENTAL IMPAIRMENT

As alleged by Mr. Doom, the ALJ erred in his assessment of Plaintiff's mental impairments.[1]

### A.     The ALJ's Duty in Assessing the Plaintiff's Mental RFC

In assessing an individual's mental impairment, the ALJ must employ a "special technique" which involves rating the degree of functional limitation under four broad functional areas. 20 C.F.R. § 404.1520a(b)-(c). This assessment is documented on a Psychiatric Review Technique (PRT) form and is used to rate the severity of the mental

---

[1] On page 5 of his opening brief, Mr. Doom states that his primary argument is "that the ALJ violated the requirement of Social Security Ruling (S.S.R.) 96-8p that 'nonexertional capacity [which includes limitations from Mr. Doom's pain and moderate impairment in concentration, persistence and pace] must be expressed in terms of work-related functions.'" (ECF No. 14:5) (brackets in original). And later, Mr. Doom states that the "ALJ's limitation to unskilled work did not properly account for Mr. Doom's headache impairment." (ECF No. 14:8). But Plaintiff does not develop an argument regarding an alleged failure to include limitations owing to pain. (ECF No. 14:5-12). And nowhere in the record or at the hearing does Mr. Doom allege an impairment involving headaches. Thus, the Court should limit its discussion to the alleged failure to properly evaluate the Plaintiff's mental impairment, as any argument regarding work-related limitations from pain or headaches has not been fully developed. *See Suttles v. Colvin*, 543 Fed. Appx. 824, 826 (10th Cir. Oct. 31, 2013) (unpublished op.) (refusing to address plaintiff's "conclusory" objection where the plaintiff fails to "challenge particular aspects of the ALJ's discussion of the evidence, nor cite to specific evidence in the record that the ALJ should have but did not discuss.")

impairment at steps two and three of the sequential evaluation process. *See* Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at 6-7 (July 2, 1996) (SSR 96-8p).

Step four requires a more detailed assessment by itemizing various functions contained in the broad categories which were summarized on the PRT. *Id.* In assessing the RFC, the ALJ must consider the limitations and restrictions imposed by a claimant's severe impairments and express any mental limitations in terms of specific, work-related mental activities he or she is able to perform. *Id.*, at 6-7.

**B.     Evidence Concerning the Plaintiff's Mental Impairments**

Non-examining State Agency consultant Dr. Diane Hyde, completed two reports in her review of Plaintiff's medical records. In the PRT form, Dr. Hyde diagnosed Mr. Doom with a "cognitive mental impairment, not otherwise specified," and concluded that Plaintiff was "moderately" impaired in the areas of "maintaining social functioning" and "concentration, persistence, or pace." (TR. 884, 893, 895).

In the Mental Residual Functional Capacity Assessment (MRFCA), Dr. Hyde performed a more detailed analysis of the broad findings on the PRT form, providing specific work-related limitations. (TR. 897-899). Here, Dr. Hyde found that Mr. Doom was "markedly" limited in his ability to understand, remember, and carry out detailed instructions, as well as in his ability to interact appropriately with the general public. (TR. 897-898). In conclusion, Dr. Hyde provided the following "functional capacity assessment:"

> Claimant can perform simple tasks with routine supervision. Claimant can relate to others on a superficial work basis. Clmt should avoid contact with the general population. Claimant can adapt to a work situation for simple, work-related purposes.

(TR. 899).

### C. Error in the RFC Regarding Mental Work-Related Limitations

Mr. Doom alleges that the ALJ erred in his evaluation of the Plaintiff's mental impairments, including: (1) the "organic mental disorder" which the ALJ deemed severe at step two, (2) Dr. Hyde's findings on the PRT form, and (3) Dr. Hyde's opinions of specific work-related limitations as expressed on the MRFCA.[2]

Once the Plaintiff's mental impairment was deemed severe at step two, the ALJ had to discuss the impact of the impairment throughout the remainder of the disability determination. 20 C.F.R. § 404.1545(a)(2). To be sure, the presence of an impairment, albeit severe, does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at 2 (N.D. Okla. Dec. 30, 2014) (unpublished op.) And Dr. Hyde's opinions regarding Mr. Doom's "moderate" limitations in the areas of "social functioning" and "concentration, persistence, and pace" were opinions expressed on the PRT form, which is "not an RFC assessment." SSR 96-8p, at 4. Thus, the ALJ had no duty to express these particular findings in the RFC. *See Bales v. Colvin*, 56 Fed. Appx.

---

[2] On page 11 of his opening brief, Plaintiff states that the agency doctor had opined a moderate limitation in the ability to understand, remember, and carry out detailed instructions. (ECF No. 14:11). In fact, Dr. Hyde had deemed these impairments as "marked," not "moderate." (TR. 899). But the scrivener's error in Plaintiff's brief is insignificant, as the actual opinion imposed greater limitations than what Plaintiff stated in his brief. Mr. Doom also cites an opinion from an agency doctor who allegedly opined that Plaintiff could perform some complex tasks and had moderate impairments in activities of daily living. (ECF No. 14:11). But these findings are not in the record and Mr. Doom's citations to the transcript are inaccurate.

792, 798 (10th Cir. Aug. 15, 2014) (unpublished op.) ("[T]he ALJ's finding of a moderate limitation at step three does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment. . . .")

However, Dr. Hyde's diagnosis of Plaintiff's cognitive disorder was accompanied by various work-related limitations which the ALJ did have to consider. *See* SSR 96-8p, at 5-7. These findings included Dr. Hyde's opinions that Mr. Doom had:

- Marked limitations in his ability to understand, remember, and carry out detailed instructions,
- The ability to perform simple tasks with routine supervision,
- The ability to relate to others on a superficial basis,
- The ability to adapt to a work situation for simple, work-related purposes, and
- The inability to have contact with the general public.

(TR. 897-899).

The ALJ discussed some of Dr. Hyde's restrictions, noting that the doctor had found Plaintiff "could perform simple tasks with routine supervision and relate to others superficially, but should avoid contact with the general public." (TR. 22). The ALJ seemed to adopt the opinion, giving it "great weight." But a disconnect lies in the absence of an explanation regarding the ALJ's apparent adoption of the opinion and the RFC which failed to account for the limitations.

"The RFC assessment must always consider and address medical source opinions. If the . . . assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Lopez v. Colvin*, ___ Fed.

7

Appx. ___, ___, 2016 WL 766408, at 3 (10th Cir. Feb. 29, 2016) (unpublished op.) (quoting SSR 96-8p, at 7). Here, the ALJ deemed the mental impairment as severe at step two, acknowledged the limitations which Dr. Hyde opined had resulted from the impairment, and accorded "great weight" to at least a portion of the opinion. (TR. 17, 22). Even so, the only corresponding limitation in the RFC was that Mr. Doom should have no interaction with the public. (TR. 18).

The ALJ's failure to explain why he adopted only one of Dr. Hyde's opinions in the RFC is perplexing considering that the ALJ had explicitly discussed and given "great weight" to the opinions concerning Plaintiff's ability to perform simple tasks with routine supervision and relate to others superficially. The Tenth Circuit Court of Appeals addressed similar circumstances in *Martinez v. Astrue*, 422 Fed. Appx. 719, 2001 WL 1549517 (10th Cir. Apr. 26, 2011) (unpublished op.).

In *Martinez*, a psychologist had diagnosed the plaintiff with schizoaffective disorder and prepared a report which explained the effect of the impairment on the plaintiff's ability to function and included specific work-related limitations. *Id.* at 720-721. The ALJ accorded the psychologist's opinion "great weight" but without explanation, ignored a portion of the doctor's findings in the RFC assessment. *Id.* at 724. The Tenth Circuit concluded that ALJ's failure to explain his rejection constituted reversible error, stating, "The error lies not in how the ALJ weighed Dr. LaGrand's opinion, but in his failure to include all of the limitations found by Dr. LaGrand without explaining why he rejected them, especially in light of his conclusion that her opinion was entitled to 'great weight.'".

8

*Martinez v. Astrue* is persuasive in the instant case. Here, the ALJ accorded Dr. Hyde's opinion "great weight," yet he failed to explain his apparent rejection of Dr. Hyde's opinions regarding Mr. Doom's: (1) marked limitations in his ability to understand, remember, and carry out detailed instructions, (2) ability to perform simple tasks with routine supervision, (3) ability to relate to others only on a superficial basis, and (4) ability to adapt to a work situation for simple, work-related purposes. The Court should reverse and remand based on the ALJ's lack of explanation. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (reversing and remanding because the ALJ should have explained why he had rejected some of the consulting doctor's restrictions in the RFC, "while appearing to adopt the others.").

The Commissioner attempts to salvage the error, arguing that the ALJ accommodated Plaintiff's mental impairment by limiting him to unskilled work. (ECF No. 20:10). In support, Ms. Colvin cites *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015). Mr. Doom contends otherwise, arguing that a limitation to "unskilled work" accounts only for issues of "skill transfer," not impairment of particular mental functions. In support of his argument, Mr. Doom relies heavily on *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012). The Court should conclude that *Vigil v. Colvin* is distinguishable from the instant case. Likewise, the Tenth Circuit's rationale in *Chapo v. Astrue* is applicable to the facts here, and the Court should adopt similar reasoning.

In *Vigil v. Colvin*, the ALJ adopted one work-related limitation in the RFC—that the plaintiff could perform simple tasks—and accounted for the limitation by specifically limiting the plaintiff to unskilled work. *Vigil*, at 1203-04. As noted by Defendant, the

9

Tenth Circuit in *Vigil* stated: "[T]he ALJ accounted for [plaintiff's] moderate concentration, persistence, and pace problems in his RFC by limiting him to unskilled work." *Id.* at 1204. In doing so, however, the Tenth Circuit recognized that "There may be cases in which an ALJ's limitation to "unskilled" work does not adequately address a claimant's mental limitations." *Id.*, (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290, n.3 (10th Cir. 2012)).

In *Chapo*, a psychologist had assessed the plaintiff's mental impairment and opined that the plaintiff had multiple work-related limitations, including a marked limitation in the ability to understand, remember, and carry out detailed instructions. *Chapo*, at 1289-90. But in the RFC the ALJ limited the plaintiff to only "simple work." *Id.* at 1292. The hypothetical to the VE, however, failed to include the restriction to "simple work" and included only one of the doctor's findings—regarding the plaintiff's ability to deal with the general public. *Id.* at 1290. The Tenth Circuit Court of Appeals found reversible error, stating:

> As for the restriction to "simple" work, it is doubtful that this vague, catch-all term would have been sufficient to capture the various functionally distinct mental limitations recognized by Dr. Vega; but in any event, the failure of the ALJ to include his own mental restriction would be fatal to the validity of the hypothetical to the VE.

*Id.* at 1290, n.3.

The distinguishing factors in *Vigil* and *Chapo* are decisive to resolution of the issue here. In *Vigil*, the work-related limitation dealt only with skill level and was expressed accordingly, by the ALJ's limitation in the RFC to "unskilled work." Thus, the Court found no error because the work-related limitation and the RFC dealt *only* with

skill level. But in *Chapo*, the work-related limitations went beyond "skill level," including limitations like the ones espoused by Dr. Hyde in the instant case. And like in *Chapo*, the ALJ here only included one limitation in the hypothetical to the VE—regarding Mr. Doom's inability to deal with the general public.

The Court in *Vigil* recognized the distinction in *Chapo*, and the Court here should adopt a similar finding. The undersigned has already recommended reversal based on the ALJ's failure to explain his apparent rejection of Dr. Hyde's opinions. But even if the RFC had included a limitation to "simple work," the limitation would have been insufficient, as Dr. Hyde's opinions reached beyond "skill level," like the opinions in *Chapo*. The error is exacerbated by the ALJ's failure to include nearly all of Dr. Hyde's opinions—those concerning "skill level" and those concerning functional limitations—in the hypothetical to the VE. Defendant's assertion that "the ALJ accommodated [Dr. Hyde's opinions] by limiting Plaintiff to unskilled work" is factually incorrect and legally unsupported.

As a result of the erroneous RFC, the hypothetical to the VE was also defective and the step five finding lacks substantial evidence. *See Chapo*, at 1292 (holding that the ALJ's errors in failing to include work-related limitations in the RFC rendered the resulting hypothetical to the VE "fatally defective.").

## VI. NO ERROR IN FAILING TO PERFORM A "FUNCTION-BY FUNCTION" ASSESSMENT

Next, Mr. Doom argues that the ALJ erred by failing to conduct a "function-by function" assessment of the seven strength demands involving sitting, standing,

walking, lifting, carrying, pushing, and pulling. In the decision, the ALJ stated that Mr. Doom had "the residual functional capacity to perform sedentary work as defined in 20 C.F.R.§ 404.1567(a)" (TR. 18). Mr. Doom contends that the ALJ's reference to the broad exertional category of "sedentary work" was insufficient because the ALJ did not make specific findings regarding Plaintiff's ability in each functional area. (ECF No. 14:12-13). In support, Plaintiff relies on SSR 96-8p. The Court should reject this argument.

In *Hendron v. Colvin*, 767 F.3d 951 (2014) the Tenth Circuit Court of Appeals addressed this issue and the narrative requirements as set forth in SSR 96-8p. In *Hendron*, the ALJ concluded that the Plaintiff could perform "a *full range* of sedentary work as defined in 20 C.F.R. § 404.1567(a)." *Hendron*, at 956 (emphasis in original). The plaintiff argued that the RFC was not in the proper form, because the ALJ had not made specific findings regarding the plaintiff's abilities to sit, stand, walk, lift, carry, push, and pull. *Id.* The Tenth Circuit acknowledged that SSR 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.*, citing SSR 96-8p, at 3. The Court also noted, however, that the Ruling states that an ALJ's "[i]nitial failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case." *Id.* (emphasis in original, internal citation omitted).

For instance, at step four, the Court noted that the RFC must not be expressed initially in terms of the exertional categories "*because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.*"

12

*Id.*, citing SSR 96-8p, at 3 (emphasis in original). And at step five, a function-by-function analysis is important when the ALJ determines whether to apply the Medical–Vocational Guidelines. *See id.,* citing SSR 96-8p, at 3. Without a function-by-function analysis in these types of situations, an ALJ "may. . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Id.,* citing SSR-96-8p, at 4.

In the instant case, the ALJ did not find that Mr. Doom could perform his past relevant work, nor did he apply the Medical-Vocational Guidelines. (TR. 22-23). Furthermore, Mr. Doom does not contend that he cannot meet the exertional demands of sedentary work as defined by 20 C.F.R. § 1567(a). As a result, the Court should reject Mr. Doom's argument concerning the ALJ's failure to make specific findings on each of the seven strength demands.

### VII. PLAINTIFF'S FINAL ALLEGATION OF ERROR

In Plaintiff's final allegation of error, he presents two arguments. First, Mr. Doom states that the ALJ erred by giving "great weight" to findings from state agency doctors regarding Plaintiff's physical impairments and then failing to include corresponding allegations in the RFC. (ECF No. 14:13-14). In support, Mr. Doom cites to the transcript at page 22, where indeed the ALJ does give "great weight" to Dr. Hyde's opinions concerning Plaintiff's mental impairments. (TR. 22). But nowhere on page 22 nor anywhere in the decision does the ALJ accord "great weight" to findings regarding Plaintiff's physical impairments. To the extent that Mr. Doom is referring to Dr. Hyde's opinions, the Court should agree, as discussed above. With respect to findings

13

concerning Plaintiff's physical impairments, the argument appears misplaced, as it is limited to a sole reference to page 22 of the transcript without citation to any specific medical evidence concerning Plaintiff's physical impairments.

Next, Mr. Doom contends that the ALJ failed to properly consider limitations owing to his "degenerated knees and back and inability to fully use his dominant hand." (ECF No. 14:13-14). But Mr. Doom does not develop this argument, explain how these impairments affected his ability to work, or cite to supporting evidence. Thus, the Court should reject this allegation. *See Suttles v. Colvin*, 543 Fed. Appx. 824, 826 (10th Cir. Oct. 31, 2013) (unpublished op.) (refusing to address plaintiff's "conclusory" objection where the plaintiff fails to "challenge particular aspects of the ALJ's discussion of the evidence, nor cite to specific evidence in the record that the ALJ should have but did not discuss.")

## VIII. RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED** and **REMANDED** for further administrative development.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **March 21, 2016**. The parties are further advised that failure to make timely objection to this Report and

Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on March 7, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE